IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** <br> **Plaintiff,** <br><br> v. <br><br> **$32,381.00 IN UNITED STATES,** <br> **CURRENCY,** <br> **Defendant.** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | No. 1:23-CV-00044 |

## VERIFIED COMPLAINT FOR FORFEITURE

In accordance with Fed. R. Civ. P. Supplemental Rule G(2), the United States of America, Plaintiff, brings this complaint for forfeiture and alleges as follows:

### NATURE OF ACTION

1. This matter is an *in rem* action brought against the following defendant property: $32,381.00 in United States currency seized on July 31, 2022.

### JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345 and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

3. The Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Texas.

4. Venue is proper pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Texas.

## THE PAYCHECK PROTECTION PROGRAM

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

6. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program

rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

7.      A PPP loan application was processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8.      PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.  Under the applicable PPP rules and guidance, the interest and

principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

## FACTUAL BACKGROUND

9. On August 1, 2022, Homeland Security Investigations Office of the Resident Agent in Charge Beaumont, Texas ("HSI Beaumont") received an investigative referral from the Beaumont Police Department ("BPD") regarding a July 31, 2022, encounter with Artisha Gabriella Dimetrika Martin in Beaumont.

### July 31, 2022 BPD Traffic Stop of Martin Results in Seizures

10. On July 31, 2022, BPD conducted a traffic stop on Interstate-10 of a four-door gray in color Toyota Camry bearing Texas license plate KMW-8455.  The Toyota Camry was occupied by Martin and two minor children. Law enforcement records revealed that the Toyota Camry was registered to Martin at a residence in Baytown, Texas.

11. During the traffic stop, Martin provided BPD a fictious State of New Jersey driver's license that depicted a photograph of Martin and the name "Rikkita Jones."  Martin also provided BPD with a fictious social

security number.  During the encounter, Martin told BPD that she had been a resident of New Jersey approximately six (6) months preceding the encounter and stated that she was a resident of Baytown.  Law enforcement databases did not reveal any data and/or information regarding Martin's claimed New Jersey residency.

12. During the traffic encounter with Martin, BPD observed raw marijuana and bulk United States currency in plain sight near the front passenger area of the Toyota Camry.  BPD conducted a probable cause search of the Toyota Camry.  As a result of the search, BPD seized $32,381.00 in bulk cash that is the subject of this civil forfeiture complaint.  BPD also seized a total of 38 money orders valued at $22,500.00,[1] 27 financial records and bank cards issued to 27 other people who were not present during the traffic encounter, four laptop computers, and eleven cellular telephones. BPD also discovered and seized Martin's State of Louisiana identification card that depicted a photograph of Martin and her true and correct biographical information, Martin's business records, Martin's Bank of America financial

---

[1] These were comprised of nine (9) Rouses Money Orders; twenty-eight (28) Winn Dixie Western Union Money Orders; and one (1) Wal-Mart Western Union Money Order. These money orders were not issued to a specific party, which means they could have been endorsed and cashed by any party who physically possessed the financial instruments.

records, and a ledger that contained numerous names, addresses, and bank account information for other individuals.

**August 1, 2022 Interview of Martin by BPD**

13.   On August 1, 2022, BPD interviewed with Martin. During the interview, Martin provided her true and correct biographical information. She claimed that she was traveling from Louisiana to Baytown when she was pulled over the day prior.

14.   During the interview, Martin claimed to be a rap artist, entrepreneur, and Certified Nursing Assistant. She said she owned a consulting business called "Generational Wealth Empire Development, LLC", a business she used to conduct consultation services and tax preparation services. Martin stated that her business-related fees ranged from $3,000.00 to $9,000.00 per consultation and stated that she sourced clientele from social media platforms. She also claimed to own an apparel company called "Artymar Collection/Artymar of Fashion."

15.   When pressed by BPD about the source of the bulk cash, Martin made inconsistent statements for the source of the funds. For example, she said that $16,000 of the bulk cash came from her 2021 tax refund of $23,000.

In other parts of the interview, Martin stated she had only made $50,000 in 2021.  A tax refund of $23,000 would have been 46% of her entire self-reported 2021 income.  That's not how income taxes work.

16. Martin also claimed that she was in possession of others' bank cards because her clientele had purportedly allowed Generational Wealth Empire Development, LLC to charge fees associated with tax preparation consultation services and tax filings.  Martin admitted that she opened up bank accounts using her clients' personal identifying information.

17. Following the interview, BPD arrested Martin for felony identity theft under Texas law.  BPD obtained search warrants for all four of Martin's cellular telephones and extracted that data through a certified forensic examiner.

18. BPD referred the case to HSI Beaumont for further investigation.

**Subsequent Law Enforcement Efforts**

19. To facilitate its investigation, HSI Beaumont took possession of all relevant evidence from BPD.

20. A review of the Apple iPhone cellular telephones seized from Martin revealed thousands of stored photographs and videos of Martin;

furthermore, law enforcement databases revealed that the cellular telephone numbers associated with the Apple iPhone cellular phones were registered to or previously registered to Martin.

21. The investigation revealed that in 2021, Martin orchestrated an elaborate scheme to defraud the United States through the exploitation of federal funding allocated to small businesses in an effort to combat the negative economic impact caused by the COVID-19 pandemic. The investigation revealed that Martin and others made false entries on IRS financial records, provided inflated and false business revenue data, created fraudulent bank statements for legitimate Federal Deposit Insurance Corporation financial accounts, and created sham businesses and sole proprietorships to facilitate the processing and funding of fraudulent Paycheck Protection Program, hereinafter referred to as "PPP" loan applications.

22. The investigation revealed that Martin and more than one hundred (100) other individuals in the Eastern District of Texas and in other states conspired to commit loan fraud through the filing of more than one-hundred fifty (150) fraudulent PPP loan applications. The investigation

revealed that through Martin's efforts and those of others, the criminal network fraudulently procured approximately $3.2 million dollars in PPP loan funding between February 2021 and June 2021.

23. The investigation revealed that Martin and co-conspirators committed wire fraud and bank fraud through the utilization of various financial institutions to facilitate domestic wire transfers and utilized peer-to-peer financial services to facilitate the transfer of fraudulently procured PPP loan funding. The investigation revealed that Martin provided co-conspirators instructions on how to properly structure transactions associated with the fraudulent PPP loan funds, and how to successfully acquire forgiveness of the PPP loans.

24. The investigation revealed that between May 2022 and August 2022, Martin used social media to promote a tax fraud scheme. Martin used Generational Wealth Empire Development to promote the tax fraud scheme. The investigation revealed that Martin and more than one hundred (100) others in the Eastern District of Texas and in other states conspired to commit tax fraud through the filing of fraudulent IRS tax return documents. The investigation revealed that the criminal network procured approximately

$2.2 million dollars in tax refund funding between May 2022 and August 2022.

25.     The investigation revealed that Martin guaranteed her clientele upwards of $29,000.00 tax refunds regardless of their tax filing status or employment status.  Martin admitted to BPD that she would charge a fee of $9,000.00 to $10,000.00 upon successful funding of these bogus tax returns. Martin offered to compensate her clientele between $1,500.00 and $2,000.00 for successfully recruiting additional clientele to participate in the criminal conspiracy.

26.     The investigation further revealed that Martin used a weblink associated with her company Generational Wealth Empire Development to source the following information from her clientele: first name, last name, social security number, email address, residential address, bank name, account number, routing number, ID.me username and password, and State-issued identification documents. Martin subsequently used the sourced information to prepare/file fraudulent tax related documents.

27.     The investigation revealed that Martin's Apple iPhones contained stored copies of co-conspirator's IRS Form 1040 – U.S. Individual Income Tax

Returns, and stored IRS online refund tracking portal weblinks that contained co-conspirators' personal identifying information. The investigation revealed that Martin used similar data entries on others' tax documents to ensure each client received a tax refund in excess of $20,000.00 regardless of whether they were actually entitled to receive such a refund.

28. The investigation revealed that Martin engaged in a scheme to fraudulently create bank accounts with co-conspirator's biographical information. Martin primarily created the accounts with GO2BANK. The investigation revealed that Martin chose GO2BANK because the financial institution permits up to $9,000.00 daily withdrawals. The investigation revealed that Martin routed the bank cards associated with her clients' newly created accounts to addresses associated with Martin in Texas and Louisiana. The investigation revealed that Martin conspired with relatives to receive the bank cards. Upon receipt of the bank cards and notification that the tax refunds were deposited into the newly created accounts, Martin used others' bank cards to withdraw her compensation.

29. The investigation revealed that Martin used various money service businesses, namely Western Union and Rouses to purchase money

orders with a cash value between $500.00 and $1,000.00. Martin traveled to various stores and purchased money orders until she accumulated her tax preparation fees of $9,000.00 to $10,000.00. The investigation revealed that Martin made these withdrawals without her clients' knowledge. The investigation revealed that Martin committed mail fraud by subsequently mailing the clients their newly acquired bank cards following the withdrawal of her tax preparation fees.

30. The investigation revealed that on an occasion, Martin utilized one of the co-conspirator's GO2BANK accounts to transfer $7,500.00 to her Artymar Collection/Artymar of Fashion business account.

31. The investigation revealed that Martin sent co-conspiring clientele photographs of money order purchases that were purchased with their newly acquired bank cards. The investigation revealed that Martin did this to appear transparent to her clientele about how she paid herself their tax preparation fees.

32. The investigation revealed that Martin's Apple iPhones contained identifying documents for more than one hundred (100) co-conspirators,

photographs and videos of bulk United States currency, checks, cashier's checks, and money orders.

33. The investigation revealed that between 2021 and 2022, Martin used several financial institutions, including Bank of America, to commit money laundering and/or conduct an unlicensed money transmitting business. Martin instructed co-conspirators to transfer funds to her Bank of America business account and personal account to satisfy payment for her services on their behalf in conducting various financial fraud schemes. Martin also instructed co-conspirators to compensate her via peer-to-peer banking applications. A review of Martin's Bank of America records revealed that co-conspirators made direct transfers to Martin's personal and business accounts and revealed that Martin transferred money received from co-conspirators on peer-to-peer banking platforms to her personal and business accounts between 2021 and 2022.

34. Texas Workforce Commission records revealed that Martin earned a total income of less than $24,000.00 between January 2020 and September 2021, and a total income of $0.00 between October 2021 and September 2022. Martin's financial records revealed that one of the bank

accounts that she used to facilitate the PPP loan scheme received more than $430,000.00 in deposits between February 2021 and July 2021. The investigation revealed that Martin used the same financial account to facilitate receipt of funds related to the tax fraud conspiracy and received more than $56,000.00 in deposits during the month of July 2022.

35. Based on information learned during the investigation, to include evidence seized during BPD's July 2022 encounter with Martin, admissions made by MARTIN during a BPD interview, information and data sourced from Martin's cellular telephones, and information sourced from Martin's financial records, there is sufficient reason to believe that the $32,381.00 seized from Martin is forfeitable because of its relation to a financial fraud criminal conspiracy.

## BASIS FOR FORFEITURE

36. The defendant property, $32,381.00 in United States currency is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 981(a)(1)(D) because it constitutes property involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956, 1957, and 1960

and/or constitutes proceeds traceable to violations of 18 U.S.C. §§ 1028, 1031, 1341, 1343, 1344, 1952, 1956, 1957, and 1960.

37. The defendant property has been seized and is in the custody of U.S. Customs and Border Protection, a Department of Homeland Security component.

## POTENTIAL CLAIMANT

38. The potential claimant to the defendant property is:

> Artisha Gabriella Martin
> 13031 Ponders Quarters Ln
> Amite, Louisiana 70422

## CLAIM FOR RELIEF

39. The United States respectfully requests that the Court forfeit the defendant property to the United States, award costs and disbursements in this action to the United States, and order any other relief that the Court deems appropriate.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY


*/s/   Robert Austin Wells*
ROBERT AUSTIN WELLS
Assistant United States Attorney
Texas State Bar No. 24033327
110 N. College, Suite 700
Tyler, Texas  75702
Tel:   (903) 590-1400
Fax:   (903) 590-1437
Email: robert.wells3@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Quintin Moses, hereby state that:

1. I am a Senior Special Agent with the United States Homeland Security Investigations.

2. I have read this Complaint, and the information contained herein is true and correct to the best of my knowledge.

3. The information contained in this Complaint comes from the official files and records of the United States, statements from other law enforcement officers, and my investigation of the case.

I state and verify under penalty of perjury that the foregoing is true and correct.

QUINTIN R MOSES
Digitally signed by QUINTIN R MOSES
Date: 2023.01.31 09:15:06 -06'00'

Quintin Moses
Special Agent
United States Homeland Security Investigations

Dated: **1/31/2023**